# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

DERRICK JOHN RAYMOND DANIELS,

    Plaintiff,

VS.

                                   **5 : 14-CV-442 (MTT)**

Lieutenant FELTON, *et al.*,

    Defendants.

## RECOMMENDATION

Presently pending in this action brought pursuant to 42 U.S.C. § 1983 is a Motion for Summary Judgment filed on behalf of Defendants Felton, Crawford, and Sutton. (Doc. 69). The Plaintiff was notified of the filing of the Defendants' Motion for Summary Judgment, advised of his obligations under the law, and directed to respond thereto within thirty (30) days. (Doc. 71). The Plaintiff has filed a response to the Defendants' motion, wherein he seeks to dismiss his claim against Defendant Felton. (Docs. 73, 73-1).

Plaintiff filed this action in December 2014, raising allegations of deliberate indifference to a serious risk of harm while he was confined at Macon State Prison in February 2013. (Doc. 1). In his Complaint, Plaintiff alleges that Officers Crawford and Sutton[1] opened his cell door from the prison control booth and allowed six inmates to enter his cell while he and his cellmate were sleeping. *Id.* These inmates then violently attacked Plaintiff with weapons, allegedly stabbing Plaintiff over twenty (20) times. *Id.* Plaintiff alleges that

---

[1] Originally identified as Officer Hannah. Plaintiff filed an Amended Complaint on March 9, 2016, substituting Defendant Rodney Sutton for Defendant Hannah. (Doc. 53).

Defendant Felton arrived on the scene before Plaintiff escaped his attackers, but only filmed the incident and did not intervene or otherwise assist Plaintiff. *Id.*

## DISCUSSION

### A. Motion for Summary Judgment Standard

Defendants filed a Motion for Summary Judgment on September 12, 2016. (Doc. 69). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

As the party moving for summary judgment, the defendant has the initial burden to demonstrate that no genuine issue of material fact remains in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, including pleadings, discovery materials, and affidavits, which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex*, 477 U.S. at 323. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Defendants have supported their summary judgment motion with their affidavits, video recordings of the incident, Plaintiff's deposition testimony, and various portions of Plaintiff's prison record. (Docs. 69-3 - 69-14).

## B. Analysis

### *Eighth Amendment violations*

It is well settled that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828-829 (1994). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. . . [although i]t is not . . . every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 832, 834. To establish a claim of deliberate indifference, Plaintiff must produce "sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v.Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). A prison official violates the Eighth Amendment in this context of inmate-on-inmate violence "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Caldwell v. Warden, FCI Talledega*, 748 F.3d 1090, 1098 (11th Cir. 2014).

Defendants do not dispute that an inmate disturbance took place in the H-1 dormitory at Macon State Prison on February 11, 2013, nor do they dispute each Defendant's subjective knowledge of the disturbance as a serious matter. However, Defendants maintain that they did not act with deliberate indifference to the risk of harm to Plaintiff.

*Defendant Felton*

In Plaintiff's deposition testimony, which was taken before the Amendment to his Complaint adding Defendant Sutton as a Defendant, Plaintiff testifies that Defendant Felton was "[a]t some point in time" present during the February 11, 2013 attack, and did not give instructions for the attack to stop or for other guards to step in. (Doc. 69-13, pp. 17-18).

Inasmuch as Plaintiff now asks that his claims against Defendant Felton be dismissed, the Court will not address the substance of these claims. Plaintiff states in his response to the Defendants' summary judgment motion that, "after viewing the evidence [I] cannot allege actual, factual controversy of Defendant Felton [sic] response to the altercation thereof and control the situation, with the courts['] permission Plaintiff would like to dismiss his claim against this Defendant". (Doc. 73-1, p. 4). Additionally, Plaintiff testifies in his deposition that Defendant Felton did not show up at the scene of the altercation until "it was over, after . . . [a]fter we separated from each other. . . . and that "after a point in time, he did tell us to lock down and instruct everyone to lock down after, a while after the situation was over with." (Doc. 69-13, p. 32; Doc. 69-14, p. 23).

Although Plaintiff asks that his claim against Defendant Felton be dismissed "without prejudice", the Court understands Plaintiff's desired dismissal of these claims to be an admission that they lack merit and would not withstand summary judgment scrutiny.

4

Accordingly, Defendant Felton should be granted summary judgment as to Plaintiff's claims against him. The Court notes that, should Plaintiff's request to dismiss Defendant Felton be granted, such dismissal would effectively be "with prejudice" as the two-year statute of limitations has expired.

*Defendant Crawford*

Plaintiff testifies in his deposition that on February 11, 2013, Defendant Crawford opened Plaintiff's cell door for inmates not assigned to that cell. (Doc. 69-13, p. 18). Plaintiff was asleep at the time the door was opened, and named Crawford as a defendant because she was the officer assigned to the control booth at the time. *Id.* at 21. Plaintiff states, "[H]onestly, I couldn't tell you exactly who popped the door." *Id.* The video evidence submitted by the Defendants shows inmates entering a cell that was presumably Plaintiff's, but there is no indication on the video as to how that door was opened. (Docs. 69-5 – 69-7).

Although Plaintiff did not see Defendant Crawford unlock his cell door and did not hear anyone else talk to Crawford about unlocking Plaintiff's cell door, Plaintiff relies on his knowledge of prison life to conclude that other inmates "signaled" to Crawford to unlock the cell. *Id.* at 21-22. Plaintiff states, "So I'm pretty sure, I'm pretty sure she didn't know. . . I'm pretty sure she didn't know they was going to come in and try to hurt us. . . I'm pretty sure of that. But at the same time, she did it against proper procedure. . . I think she was just, really just a little negligence, a lot of negligence and just not thinking open what door and open it. Just pressing buttons." *Id.* at 38-39.

According to Plaintiff's deposition testimony, cell doors at Macon State Prison are

5

unlocked at some point at the beginning of each day so that inmates can release the door lock from inside their cells to exit the cell. *Id.* at 25. Plaintiff maintains, however, that cell doors remain locked from the outside at all times, and inmates must be allowed entry into a cell from the Control Booth or other officers. *Id.* at 29.

In her affidavit testimony, Defendant Crawford states that

> I was working as booth officer at Macon State Prison on February 11, 2013, and I did have some involvement in controlling the incident that occurred on that date. . . I became aware that a disturbance was taking place on February 11, 2013, when I personally observed, from the booth, that several inmates were fighting with weapons. I immediately called a Code 1 over the radio. Code 1 indicates inmates fighting. I saw several inmates fighting and stabbing at each other with weapons. . . I did not have any interaction with any inmates involved in the disturbance while it was in progress. Nor had I spoken to any of the inmates involved prior to observing the incident from the booth. I did not open the door to any inmates' cell during the February 11, 2013, disturbance. Nor would I open an inmate's cell door at any time without being instructed to do so by an officer.

(Doc. 72, ¶¶ 6-10).

As a control booth officer, Defendant Crawford's duties included, "but [were] not limited to: watching the dorm for safety and security, documenting entrance into and exit out of the dorm by inmates, handling paperwork for newly-assigned inmates, noting radio traffic, assisting floor officers by opening doors that needed to be opened." *Id.* at ¶ 4.

Viewing the facts in the light most favorable to the Plaintiff as the non-moving party, as set forth in Plaintiff's complaints and deposition testimony, Defendant Crawford opened Plaintiff's cell door on February 11, 2013 and other inmates gained entry into Plaintiff's cell, resulting in injury to Plaintiff at the hands of the other inmates. Defendant Crawford admits

6

to being in the control booth at the time in question, with the capability to open cell doors remotely. Although Crawford denies opening Plaintiff's cell door "during" the February 11, 2013 altercation, she does not deny opening the door prior to the altercation, the critical time period in regard to Plaintiff's claims against Crawford.

Regardless of whether Defendant Crawford opened Plaintiff's cell door on February 11, 2013, Plaintiff has not established that Crawford had the subjective knowledge that opening the door created or exposed Plaintiff to a serious risk of harm from the attacking inmates. "To prove that [Crawford was] deliberately indifferent to the risk that he would be injured, [Plaintiff] had to prove: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013) *quoting Townsend v. Jefferson County*, 601 F.3d 1152, 1158 (11th Cir. 2010). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious'". *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007) *quoting Farmer*, 511 U.S. at 842.

However, it is not necessarily obvious that opening a cell door, resulting in other inmates gaining entry into another cell, by itself, creates a substantial risk of harm to an inmate in the unlocked cell. *See King v. Anderson*, 2014 WL 2504549 (M.D.Ala. 2014) (officers' entrustment of broom to inmates did not amount to more than mere negligence; plaintiff failed to raise a genuine dispute of a substantial risk that an inmate could pose a threat of serious harm "by wielding a broom handle as a weapon against another inmate".); *Carter v. Galloway*,

7

352 F.3d 1346, 1350 (11th Cir. 2003) (defendants' awareness of cellmate's general propensity towards being problematic did not establish their subjective awareness of a serious risk of harm to plaintiff). Although the Incident Report describing the February 11, 2013 incident notes that Plaintiff and his cellmate "are known to be affiliated with the Good Fellas gang" and that the inmates who entered the cell "either admit to or are known as being affiliated with the Blood gang", Plaintiff denies that he was part of a prison gang and blames the attack on his cellmate's identification as a gang member. (Doc. 69-4, p. 4; Doc. 69-13, pp. 35-36). Plaintiff does not allege or establish that Crawford had prior knowledge of the inmates' violent natures or intentions of attacking Plaintiff and his cellmate, and denies having had any problems with the attackers before February 11, 2013. (Doc. 69-13, p. 35).

Indeed, there is no indication that Defendant Crawford possessed any knowledge of a threat of violence at the time in question. Although "an official may not escape liability merely by showing that he did not know the claimant was likely to be assaulted or that an assault would be committed by the specific prisoner who eventually committed the assault", Plaintiff has presented no evidence that Defendant Crawford was somehow informed or aware of any risk of harm. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995). Unlike the present case, in *Hale*, the plaintiff produced evidence of previous inmate-on-inmate violence at his overcrowded jail, which had resulted in injuries requiring medical attention, and presented depositions and affidavits supporting a finding that the defendant jailer subjectively knew that a substantial risk of harm existed at the jail. *Id.* Additionally, an expert testified that given the conditions at the jail during the time period in question, "it was plainly foreseeable to a reasonable law enforcement official that a violent attack was likely to

8

occur", resulting in a denial of summary judgment for the jailer. *Id.*

"The essential problem here . . . is that there is no evidence of [Defendant Crawford's] subjective knowledge [regarding the opening of Plaintiff's cell door at the time she allegedly opened it]. Nothing in the record even remotely suggests that [Crawford] had any belief, suspicion, knowledge, or inclination that [the attack would take place], nor that [Crawford] had actual knowledge that [there was a particularized threat against Plaintiff]." *Estate of Owens v. GEO Group, Inc.*, 660 F. A'ppx 763, 770 (11th Cir. 2016). Plaintiff admits that "[s]o I'm pretty sure, I'm pretty sure [Crawford] didn't know. . . I'm pretty sure she didn't know they was going to come in and try to hurt us. . . I'm pretty sure of that." (Doc. 69-13 at 38.) Moreover, "in order to succeed on a 'prison conditions' theory, a plaintiff cannot rely simply on 'occasional [or] isolated attacks by one prisoner on another' but rather must prove 'confinement in a prison where violence and terror reign.'" *Estate of Owens*, 660 F. A'ppx at 771.

### *Defendant Sutton*

In his Amended Complaint, Plaintiff alleges that "Rodney Sutton [sic] actions in exposing plaintiff to serious bodily harm by opening his cell door for unauthorized inmates as well as failure to protect Plaintiff from unreasonable risks constitutes . . . deliberate indifference under 28 U.S.C. § 1983." (Doc. 53).

In his affidavit testimony, Defendant Sutton states that

> I was working as floor officer at Macon State Prison on February 11, 2013, . . . [and] I became aware that a disturbance was taking place . . . when, by looking through the windows from outside H-1 Dormitory, I personally observed several inmates fighting, with weapons. I did not go inside the building, but immediately

> called a Code 1 over the radio. Code 1 indicates inmates fighting. . . I did not attempt to enter the building, as I was instructed by my immediate supervisor to remain outside. . . I did not have any interaction with any inmates involved in the disturbance while it was in progress. Nor had I spoken to any of the inmates involved prior to observing the incident from outside the H-1 Dormitory.

Doc. 69-10, ¶¶ 6-10.

"[P]rison officials . . . may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety'. . . [P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause." *Farmer*, 511 U.S. at 844-45 (internal citations omitted); *see also Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2011), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk"). Plaintiff's allegations that Sutton opened his cell door are contradicted by the undisputed summary judgment record that Sutton was not in the Control Booth at the time of the February 11, 2013 incident, and was in fact not in the H-1 Dormitory. Moreover, Plaintiff has not rebutted Sutton's summary judgment showing that Sutton took reasonable steps to address the situation once the attack began. *See MacKay v. Farnsworth*, 48 F.3d 491 (10th Cir. 1995) (measures taken by prison officials to abate harm, including verbal commands and waiting for additional back-up, were reasonable and evidenced no deliberate indifference on the part of the officials). Defendant Sutton called a code to alert the prison staff and bring

other officers to deal with the situation.

Inasmuch as Defendants have established, and Plaintiff has failed to rebut the showing, that Defendants did not violate the Eighth Amendment, all of Plaintiff's claims, including those seeking equitable relief, fail. Accordingly, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment be **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. The District Judge shall make a de novo determination as to those portions of the Recommendation to which objection is made; all other portions of the Recommendation may be reviewed by the District Judge for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 8th day of March, 2017.

       s/   *THOMAS Q. LANGSTAFF*

**UNITED STATES MAGISTRATE JUDGE**